Thank you, Your Honors. Over the last 51 years, I have handled approximately 50 safe deposit box cases, sometimes representing the banks, sometimes representing the bank's customer, and sometimes being retained by one or the other as an expert to testify on banking practices and procedures. Without exception, all of those cases turned on the answer to one question. Did the customer have property in a safe deposit box that was not returned? And Counsel, how normally is that established, the fact that there was property in the safe deposit box? That's the very first step that leads to that question, Your Honor, and that is the plaintiff or the bank customer will testify, I had certain property and I put it into the safe deposit box and it was missing when I went back there. That is not conclusory. It's not uncorroborated. It doesn't need to be corroborated. That is personal testimony of facts personally known to the witness. But that doesn't have to be accepted without question, does it? No, it does not have to be accepted without question. The point is, if it is accepted by the jury, then the plaintiff wins. There aren't any other alternatives. The step two that occurs here is after the plaintiff testifies, I mean, if there isn't any other evidence, presumably the jury is going to leave her. But we didn't have a jury here. So the issue was whether or not a material issue of fact was raised regarding that matter. Exactly right. And when the plaintiffs put in their testimony here saying I had the property and I put it in and it wasn't returned, that established their prima facie case. And the district court found that to be true. The bank accepted that as true. Everybody proceeded on that basis. The second step, of course, is that by making that, by presenting that evidence, that raises a presumption that the bank... In the summary judgment context? Yes. So what case says in the summary judgment context there are presumptions raised that have to be rebutted? I'm not familiar with the case. So enlighten me, please, as to in the summary judgment context where a presumption is raised that has to be rebutted. Well, I think in every case I've ever read, that's been the presumption, Your Honor. I'm asking you for a summary judgment case. Because generally in summary judgment, the issue is whether or not a material issue of fact has been raised. Okay. In certain cases, Title VII cases, for instance, there's burden shifting and presumptions. But in the general summary judgment context, can you give me a case that uses the presumption analysis? I don't know if I can think of a specific case where it was a summary judgment and they talked about the presumption. Let me interrupt you for just a second, counsel, and see if I've got the procedure right. This was a motion to dismiss under 12b-6, right? That was with respect to the fraud claim. Was it converted into a summary judgment motion by the district court? No. The negligence claim and the breach of contract claim were motion summary judgments. That's right. And the conversion claim. Okay. When the bank brought the motion for summary judgment, they proceeded on the basis that, number one, there was the testimony of the plaintiffs that they had put property in the box. And then everybody acknowledged that that in and of itself raises the presumption that the bank is at fault. So, counsel, if we disagree with you regarding your presumption theory, do you lose? No. Why not? Because, first of all, the bank has to... Well, let me back up just a little bit. When the presumption is there, and everybody here, in this case so far, has acknowledged it. My question was, if we don't agree with you regarding your presumption theory, do you lose? No. Why not? Because the plaintiffs have testified that they put property in, and that has not been rebutted. Are you claiming res ipsa loquitur, the fact that the plaintiff put it in and didn't have any particular... didn't have any contribution to getting it out, that it must be the bank that took it? No. This may be a res ipsa loquitur presumption. But if we're going to talk about whether there is or is not a presumption, when the plaintiffs testified that there was property in the box, that's their testimony, that is their evidence, and the bank never contradicted that. The bank never rebutted that. The bank never contested that. But the bank contested was whether or not the bank was negligent in the loss, or whether the bank converted the property. Correct? Correct. So that was the basis for the summary judgment ruling, that there was no negligence on the part of the bank or no fault on the part of the bank in terms of the property being gone, the asserted property being gone. Okay. I understand, and you're correct in this sense. The plaintiffs have their testimony that raises a presumption, and the bank tries to rebut the presumption by saying, we follow standard banking practices and procedures, which show that we're not negligent, and that rebuts the presumption. And we all get that far in this case. But what did happen then at that point was that the court failed to consider that after that presumption is rebutted, it simply disappears. Then what happens? And it's absolutely clear that the testimony of the plaintiffs is their evidence, and it's going to be weighed by a jury, and the bank will put on whatever evidence it has. And then the jury make a decision as to whether or not the plaintiffs are truthful that they had property in there that was not returned. Well, in the summary judgment context, the court has the obligation before allowing a case to go to the jury to determine if there is a material issue of fact. Correct. Correct? And isn't that what the court did in this case, made a determination that there was not a material issue of fact remaining after all the evidence was presented? Well, that's exactly what the court did, only it was incorrect in doing so for two reasons. Number one, the bank had the burden of coming forward and rebutting the presumption. And what if they didn't? What should the court have done if the bank failed in that burden of production? Then they should have denied the motion and set it for trial. Not grant summary judgment to the plaintiffs? To the plaintiffs. That's correct, because it's only a presumption at that point, and a jury may or may not believe it. So we have scenario one. The plaintiff produces their evidence that I put stuff in the box and later there wasn't that, the stuff was gone. And that then creates a burden on the bank to a burden of production. And here I know you dispute whether they met it, but we can just assume the bank met that with their showing that they did everything according to the standards that banks use in terms of how they monitor safety deposit boxes. And your argument is that's where the trial judge went down the wrong path, because he granted summary judgment to the bank and he should have said this goes to trial. And that's only in this case because the bank was bringing the motion. But to come back to this question here, if the plaintiffs had brought the motion for summary judgment and they had put forward the evidence, I had property in there and it was not returned, the bank would have had an obligation to dispute that so that there would be a disputed issue of fact that could not be decided on summary judgment. And so if they had not done that, yes, the plaintiffs would have won on a summary judgment, because then there would have been no disputed fact. But in this case, the bank brought the motion. By doing so, it could have said, well, we dispute whether or not there's any property. They could have said they didn't have property, they didn't put it in the bank. But, of course, that would have been fruitless because the plaintiffs would have said, well, yes, we did. I put it in and it's not there. There's a disputed fact. Mr. McCullough, may I interrupt you for a second? Yes. This is your position that the bank, there is evidence, indeed, that the bank did not comply with the standard of care, the standard of care is that of the industry, it's a little bit like a malpractice standard of care, by allowing the key of the customer to be in the possession of some of its employees in both cases. Right. If the standard policy is always to make sure that the customer's key is exclusively in the possession of the customer at all times, right, including the time when it's put in the safe deposit box, the customer's there and keeps his hand, his or her hand, on the key or it's in front of her, right? Right. That's your point, isn't it, that there is an opportunity if the customer is separated from the key by the help of an employee of the bank to make a copy of the key? That's one of the two points that we have. Now, what's your evidence that the customer was, as a result of the actions of the bank, deprived of exclusive possession of the key? Well, we have the testimony of, for example, Arsenault Banyan, when he said, I never took the key out and put it in the safe deposit box. In every single instance, the bank employee took his key and put it in. And he was present when that happened? On most occasions. Did he ever say in any of his declarations that the bank employee made a furtive move with the key so that a copy of the key could be made by palming it or by photographing it? Was there any evidence of that? He did not notice anything out of the ordinary. Right. There were occasions when he, like on one occasion, when his child went around the corner and he had to chase after her, and so he was not present. But he didn't have to chase after her without first taking out the key, right? Well, he had already handed the key to the employee. Well, you could go back and say, I've got to chase my girl, so therefore give me the key so I can chase my girl. Well, could have. But let me ask you this. Is there any evidence that the employees of the bank deprived, for a single instance, the customer from possession of the key outside the customer's view? There is indirect evidence that that happened in the sense that if the customer had property in the box, it's telling the truth, and it was gone, and the bank has no explanation like there was a fire or something, that's indirect evidence that at some point in time a bank employee had access to the key such that he could make a profit. But he had access to the key because of the customer's action in not keeping the key. Now, I'm asking you this. Was there any evidence that any bank employee took any action that prevented the customer from keeping uninterrupted possession of the key, either in his sight or in his hand? No evidence that he couldn't have kept it in his own possession. But that's not the question. The question is, did the bank follow standard banking practices and procedures? The standard banking practice is to have the customer keep the key in his hand. That's right. That's a duty on the bank's part, not a duty on the customer's part. Wasn't there a banking practices expert? Pardon? Wasn't there evidence from a banking practices expert? I'm glad you brought that up. Yes, there was. They had their expert, Jody Pratt. She said, here's what standard banking practices are. Now, we contend that Citibank didn't follow. Did she say that the bank met those? Well. Did she? Yeah. Now, not really. She outlined a whole bunch of practices, and then she said, and the bank's practices were consistent with standard banking practices. But that's not the issue. The issue is not what the standard, I mean, it could be an issue, but in this case, that's not the issue. The practices of the bank are only as good as the employees follow them. But for purposes of the summary judgment hearing, the banking practices expert said that the practices of the banks in question were consistent with industry standards. That's right. She said they're consistent with industry standards. The question is, did the bank follow them? If the bank didn't follow them, it doesn't matter what the standards are. Where's the evidence that the bank didn't follow them? That's not my burden. That's the bank's, and the bank didn't do it. In negligence, the breach has to be shown by the person who's asserting negligence, and that's your clients. That's correct. But we are aided by the presumption that the bank was at fault. That's why the bank has to come forward and show that they followed things. That's why I asked you the question earlier. If we disagree with you regarding your presumption theory, do you lose? Because it seems to be that you're saying that without the presumption, your clients cannot meet their burden of showing a breach of duty. Well, we're going to admit for just a second here that the presumption disappeared. But that doesn't mean we lose, because the jury could still infer from the facts that the bank was at fault. You've got to raise a material issue of fact before you even get to the jury. Okay. When the customer testifies, I put it in there. There is an inference that it's the bank's fault if they don't give it back, and that is also why we have a presumption. We have that inference. That raises the presumption. Then the bank has to come forward and rebut the presumption. If they don't, then they're going to lose. We understand your argument, Kelsey. You've exceeded your time. We'll give you a minute for a rebuttal, but we understand your argument. Okay. Good morning, members of the court. My name is Tricia Legittino, and I represent Citibank. With the court's permission, I would like to go through a few items that the appellant has raised and address what the law actually is on these issues and what the facts actually are that were presented to the court in the motion for summary judgment. The first issue is what I'm terminating or I'm qualifying as the negligence-slash-burden issue, for my own personal organizational purposes, which seems to be the issue that everyone is really consumed with in this case. With regard to that issue, I think that there are many points that everyone in this case can agree on. First of all, we all agree that the appellant rented safe deposit boxes from Citibank. No dispute there. May I ask you a question? Of course. I don't mean to interrupt, but the thing that's bothering me is that there is evidence in this case by Zanna Weiss that she vaguely recalls a teller leaving her key in the lock while she was in another room. Is it your position that there's an obligation on the part of the customer to withdraw the key? It's our position that with regard to that testimony, Ms. Weiss could not recall when she did that. She had this box for over five years. But if she vaguely recalls leaving a key in a deposit box, and there is a practice by the bank to make sure that the customer always has a customer key in her possession, right, I would submit, Your Honor, that if a bank employee allowed a customer to leave their key dangling in the box, that would be a breach of the protocol, absolutely, because those keys are supposed to stay under the control of the customer, and the bank's guard key is supposed to stay under the control of the bank. Well, then does that make a triable issue of fact out of it and a motion of summary judgment wrongly granted? I do not believe that that one issue, which going to the weight of that evidence, is very weak, Your Honor, because Ms. Weiss could not recall over the five years. You said she could vaguely recall a teller leaving her key. Is it your position that vaguely recall is insufficient personal knowledge from which a witness can testify? Yes, number one, and also. I have a case that says that if you style your knowledge as a vague recollection, that is insufficient to create a triable issue of fact on a motion of summary judgment. I would say, Your Honor, that is speculative evidence, which is speculative testimony not based on. No, no, no, I didn't ask for you to characterize my question. I apologize. I asked you if you have any authority for the exact question, which is vague recollection is insubstantial on a motion for summary judgment. As I stand here right now this morning, Your Honor, I do not have a case to address that. I couldn't find one either. Okay. Then I feel as if I've done a good job. So what you're really saying is that Weiss's statement of a vague recollection is insufficient to create a triable issue of fact because it is so weak a statement of personal knowledge that the court should not accept it. That, as well as the fact that there is no causal link between her vague recollection and her items allegedly missing. As I was starting to say, the Weiss's had this box for five years. They went in and out of this box I think 26, 29 times. What you're saying is if her vague recollection included not only that the key was dangling from the box when she went around to inspect her proceedings, but she saw the employee take the key out and palm it or make some other furtive move with respect to the key, then there would be a causal link. I think there potentially could be a causal link there, but now we're talking about hypotheticals, and I really don't want to get down that rabbit hole because there was. I understand why you don't want to go down that rabbit hole. There was absolutely no evidence by any of the plaintiffs. As a matter of fact, it was undisputed in our undisputed facts that any of the plaintiffs saw an employee from Citibank copy their key, take a photo of their key, or palm the key. There's just no evidence of that happening for the five years that they went in and out of these boxes. Okay, so moving along. With regard to the renting of the boxes, we've created a Baylor-Bailey relationship, and I think that the law is very clear that in a Baylor-Bailey relationship, a Bailey's duty, Citibank here, or a Bailey's standard of care is that of ordinary care. And this whole argument that the appellants have raised regarding burdens of proof, presumed facts, presumptions, and inferences, I would submit to the court, it's really just much ado about nothing. They're creating this whole argument to supplant the procedural rules of Rule 56 and the long-held law in California as to what evidence is necessary in a safe deposit box case to prove or disprove negligence. Well, counsel, if the plaintiffs declare that there was property in the safe deposit box that they put there, they didn't take the property out and the property is missing. Isn't there an inference then that something at the bank occurred that caused their property to go missing? I would agree, Your Honor, that there is an inference, but banks are in Bailey's in a safe deposit box situation, which is a unique situation for Bailey's because it's a blind bailment, right? We have no idea what actually is in the box. But I would agree that that does create an inference for which then under the case of Weber v. Bank of Tracy, the bank then needs to come forward with evidence that it met the standard of ordinary care in the industry. Were there cameras on the premises within the safe deposit box arena? I will submit to the court that there were cameras in the – I have to keep the two branches separate in my mind. In the Sherman Oaks branch, there is a camera fixed on the door of the vault. And in the Granada Hills branch, there is a camera fixed on the hallway that leads to two vaults. One vault is the cash vault, and the other vault is the vault where the safe deposit boxes are kept. It is my understanding from banking practices that there are not cameras in the safe deposit box vaults themselves to preserve customers' privacy. Counsel, I'd like to clarify, if I'm hearing you correctly. What you're stating is that if the bank can show that they meet the standard of care, then to survive a motion for summary judgment, the customer has to show more than, I put property in the box and later that property was gone. That's correct, Your Honor. All right. So is part of the standard of care a warning to a customer when they take a bank that you better keep your eyes open when you come into the bank and use your box because your property might not be there later? I think the standard of care, Your Honor, is that as was testified to by Ms. Pratt in this case, which did not include any type of a warning like that, and there was no rebuttal evidence or dispute as to her opinion of the standard of care. For example, with the one plaintiff who had to chase his child, I think any parent knows that when your young child runs off, you run after the child to make sure the child is safe, and you might leave a key in the box. Now, according to bank custom, you should never leave that key in the box. You should always have that key in your possession. But every parent is going to run after that child. So who's at fault there? Should the customer have been warned, when you come back to this box, don't bring children, don't bring things that might distract your attention, keep your eye on the key at all times because we follow the standard of care, and when you come back, that property might not be there unless you're paying attention. I do believe, Your Honor, that there is in the rental agreement a caveat to renters that talk about that you are responsible for your key. To make sure that you keep custody of your key, don't give it away, don't let anybody borrow it or anything like that. So I do believe that the customer does have a level of duty to protect their key. I mean, these are their items in there, and it's without dispute that really the only way these boxes can be open, except for drilling, which would show that it was drilled, is for the two keys to be used. So I do believe that the customer does have a level of care that it must follow to secure his or her key. And you're asking us to agree that the customer, Mr. McCulloch's client here, have to show more than I put something in the box and I came back later and my property was missing. In this case, yes, Your Honor, because we have presented evidence, which we're required to under Weber v. Bank of Tracy, to show that we met the standard of ordinary care in the industry. But leaving the key dangling in the case of Zanna Weiss, her vague recollection, and in the case of Navalny when he chased his daughter, that was a breach of the bank's standard of care. Your position is he also has to prove that that was the occasion on which an impression was made or a key was made? I believe so, Your Honor. There must be some causal link between the alleged breach of the standard of care, supposedly, and their losses. Would a bank employee still have been there at that point if the customer's key was still in the box? Would a bank employee have been present at that time? Under the normal practice, no, the bank employee would not, because what Ms. Weiss testified to as well is that once the door was opened and the box was retrieved from its sleeve, the box, she would then be escorted out of the vault because customers can't remain in the vault by themselves. So she would be escorted out of the vault by a bank employee, who would then go back to his or her work doing whatever. And when she was done in the private showing room, I believe they have a bell at Sherman Oaks. But if we use the analogy of res obsoloquiter, once negligence has been shown by a breach of the standard of care, so long as the instrumentality which causes the damage is in the possession of the defendant, which it was when Navalny went around to chase the daughter because the only person there was a bank employee, isn't that enough to show causation? I don't believe so, Your Honor, because under res obsoloquiter, the standard is exclusive control of the defendant, that the instrumentality of the damage was under the exclusive control of the defendant. There's been absolutely no testimony that for the few seconds that Mr. Nobondian chased his daughter, that he chased her out of the vault. Was no one else there but the bank employee who was not exclusive? I don't believe so, Your Honor, because the keys were under the jewel control, and he was still in the room. Had the bank employee taken the keys? Isn't that an issue of fact? I don't believe so, Your Honor, because it's missing the exclusivity. You mean a jury could find that the key was in the possession of Navalny when he was around the corner with his daughter? I believe that the jury, I'm sorry, the question again. I mean, if he'd gone around the corner with his daughter and the key was hanging up in a safe deposit box, he was still in the possession of Nobondian? Well, he was still in the vault. He had not left the vault. He was still in the same room, in the proximity. He was not separated from his key. My concept of possession may be archaic, but it seems to me that possession is the ability to control, and that he could hardly control the key when he's around the corner. I apologize. I didn't mean to interrupt you, Your Honor. Well, he still had constructive possession. I would agree, Your Honor. I mean, he was in the same room, and again, there is, I believe, a duty on the part of the customer to guard his or her key. It's not that they could just, you know, leave it at a 7-Eleven and then blame it on the bank. I have to apologize. This is the first time I've worked on a case involving a safety deposit box, but I've worked on a lot of cases involving motions for summary judgment, both as a lawyer and as a judge. And what's the bank's position? Is the decision that you met the standard of care regarding safety deposit boxes, is that an issue of fact or law? We believe, Your Honor, that we met that standard with Ms. Pratt's testimony. I know that. But is the trial judge in error for making that decision as a matter of law, essentially, at the motion for summary judgment stage? No, it's a very typical decision that a judge makes under a Rule 56 motion for summary judgment, that there is no material issue of fact. And here, there is no material issue of fact as to whether or not Citibank was negligent. But can't a material issue of fact be created simply by the plaintiff's evidence, which is I put property, my property, my valuable property, in the box, and I came back later, and that property was gone. Not when the bank or the bailee, in this case, comes forward and says, we met the standard of care, which is the standard that's required under Weber v. Bank of Tracy. One more question. Yes. And this has to do with mechanics. When the safety deposit box is open and the key of the customer is dangling from the face of the box, can the key be removed at that point? Do you know, Your Honor, there was talk about this while the case, while we were taking depositions. I'm not so interested in talk. I'm interested in evidence. I don't recall if there was evidence about that or not. There would have been expert testimony with the locksmith experts about that. But I don't recall what, if it could be removed. Because one could say that as long as the customer could remove the key once the face of the safety deposit box was open, then he did have constructive possession. Yeah, I don't. But isn't that an issue of fact? I don't believe there was any evidence one way or the other on that in connection. But who has the burden of proving that the customer has constructive possession? I would think that would be the bank. I would think it would be the customer. And there we have it. Thank you very much.  Rebuttal. Let's put one minute on the clock. I want to make just two points, if I may. Number one, slight evidence is all you need. Weak evidence is all you need to create an issue of fact. But it has to be material. Of course. That's the point. Okay. I think that there's one thing that should not be overlooked. And that is the bank had the burden of proving it followed standard banking practices, regardless of what the practices were. And there is no evidence that they did. The two declarations they put into the case were Takahari and Clark. Their testimony was the procedures were followed, which is conclusory and uncorroborated, which is what they're complaining about my client's testimony, which is baloney, because my client said I personally did it. Takahari and Clark never said I have personal knowledge because I helped the customer into the bank. That the bank's procedures were followed. Did you make a motion to strike the affidavits on that basis? We did. We objected to the fact, and we made an objection to their declaration. Let me ask you one more question. Yes. You haven't discussed this. What about the damage limit? Does it apply? No, it does not. It's unenforceable for all of the reasons that we put forth in our briefs. Give me your major reason for being unenforceable. The strongest reason. It was not called. Because it's not enough. Pardon? Because it's not enough. Well, pennies on the dollar, when the customer, when the bank knows they're going to put in something valuable. Well, the bank doesn't know. That's the point of a safety deposit box. The bank has no idea what's going in there. Well, the bank does not want to know what goes in there. If they wanted to be safe, they would have said, what are you putting in and what's its value? That's the nature of a safe deposit box. That's why people use them, so they can put things in there that they may not want to see the light of day. That's true, too. That's true, too. They would like the privacy. But they don't expect that if they put in a diamond worth $1,000, if it's lost because of the bank's fault, that they're only going to get $10. You're claiming that the damage limit is unconscionable procedurally and substantively. Yes. Why is it? Procedurally, because it was not in bull print, it wasn't pointed out to them. And it's in the same paragraph that the court found the other provision to be unconscionable, because procedurally and substantively. So when the court came back and said, well, it wasn't procedurally unconscionable, I don't know how the court could do that. The two are in the exact same paragraph. The amount that's paid, the rent that's paid, and said that it's not reasonable to expect the bank to be liable for hundreds of thousands of dollars for a box that's rented for, what, $65 a month or something like that. $65 a year? A year. Okay. That would be the argument that the bank would make. The problem is that they don't tell the customer, you know, like in the case that the court cited. Yeah, but that goes to procedural unconscionability. Right. I still can't grasp your position on substantive unconscionability. It's based on the fact that plaintiffs and bank customers put valuable property into a safe deposit box, and they do not have any expectation that if it's lost that they're going to get pennies on the dollar. Okay. All right. Thank you, counsel. Thank you to both counsel. The case, as argued, is submitted for decision by the court.
judges: Rawlinson, Bea, Bastian